Good morning, your honors. May it please the court. Ben Neidl from Hacker Murphy LLP for the plaintiffs' appellates. Your honors, the decision of the district court should be reversed because the ETPA subdivisions at issue in this case violate the Fourth Amendment and Fourteenth Amendment v. State of New York. I'll turn to the Fourth Amendment issues first. Section 3F of the ETPA authorizes localities to demand production of landlords' business records and other information the locality deems relevant as part of a vacancy study on paying of a $500 penalty for noncompliance with no opportunity for pre-compliance review. Why is there no opportunity for pre-compliance review? What's wrong with Article 78? Article 78 is, there would be no basis to appeal in Article 78. If I refuse the search and a $500 penalty is imposed, how could an Article 78 judge vacate that as arbitrary and capricious if the statute says that the penalty of $500 is It's not that you have to win, as long as you have the ability to challenge it. Under Article 78, you can challenge something that's arbitrary, unreasonable, you can even challenge constitutionality as applied. All those potential challenges are available and I don't even think you have to wait for the fine. I think you could bring an Article 78 as soon as the demand for records are made. You could bring an Article 78 saying it's arbitrary, unreasonable, whatever you want to argue. I mean, Patel said there's not a particular type of form of pre-compliance review that's required and I have the same thought. I don't understand. I actually found cases where there was inspection of TV and radio repair, business records, Article 78. A healthcare facility being told to surrender records, Article 78. A junkyard being told they had to allow inspection of their books and records, Article 78. So there's examples of businesses utilizing this for exactly this purpose. I know that Article 78 could be used to grieve many different things. However, as I said, I think if the statute provides that the locality has discretion to deem what's relevant and impose a $500 penalty. Well, not if it's unconstitutional. Sorry? You don't have to pay it yet. I mean, you go into court right away. And as soon as they ask for the records, you can go into court. I don't see that. Again, I'm repeating myself. I don't see the defense in court if the statute says they can charge $500. But your contention is the statute's unconstitutional. So that's what you say to the Article 78 court. It's unconstitutional. But it can also be brought facially. Patel tells us that, that there's no reason a facial challenge can't be brought in a form like this, which is what we've done. There's ample discussion of that in Patel, that facial challenges of this sort aren't particularly disfavored. You could argue that it's arbitrary, that deeming that to have a zero vacancy rate based upon failing to provide the records is arbitrary. You can argue it's unreasonable. The record's being sought. It's beyond the scope that would be necessary for them to regulate under the statute. There's all sorts of arguments that could be made. What other procedure do you want? I mean, if it was an administrative subpoena, there's a provision under the New York law to try to quash the subpoena, right? If it was a subpoena, you could proceed under a CPLR Article 23. Right. So an Article 78 essentially functions the same way because it's not technically an administrative subpoena. I don't see any limitations of what you could argue in an Article 78. Well, I hear you, Your Honor. I mean, all I can say is I defer. I mean, Patel found the statute to be facially unconstitutional because the scheme itself did not provide for criminal clients. It's a very different case, Patel. That's a case where hotel records were being kept for 90 days, were being ordered to be kept for 90 days, as sort of a general preemptive strike against law enforcement, against criminals, and the theory that the hotel would be used in criminal activity. And it was very general. It wasn't a closely regulated industry. It was just motels generally. And the Supreme Court agreed with the local court and the district court there that it could be used just to harass hotel owners. That the local police, if they didn't like a particular motel owner, could just continually ask for these records. And this is a different kind of situation. This is a closely regulated matter of public interest, housing for whether or not there should be regulated housing and so forth. And they're asking for records. They're not going in and searching onto premises. They're asking you to produce them. And apparently the administration of this procedure is quite loose. So you'd have plenty of time to react by going into court. And further, Patel, furthermore, the police officer could just come to your door and say, give me these, I want to see these records. So you have no opportunity to turn around or do anything. Here, it's a demand that's made by the city government. And you can go to the Article 78 court with plenty of time and protest the alleged unconstitutionality. If I could respond to a couple of points there. On the closely regulated industry, we submit that landlord rentals residential. Not close enough. You don't think it's closely regulated? No. I think Patel strongly admonishes that the types of regulated doesn't, closely regulated does not mean regulated. But we don't have to address that. Well, that's true. But Justice said.  That's why I'm addressing it. But isn't it much different in Patel, as Judge Law pointed out, the police officer could arrest you on the spot. They could show up and say, we want these records now. And if you refuse, they could arrest you on the spot. So, of course, there's no precompliance. For a criminal review. Right. Arrest you for a crime. It's true that it is a crime. But I don't think Patel turned entirely on it. There is discussion of the criminal consequence in Patel. There is discussion. They could turn on the fact that they could demand the records immediately. And you had no opportunity to do anything. Which is clearly not the case here. A request is made for the records. And you and your clients have the ability to react to that before anything happens. Well, the statute is actually not specific. I'm sorry. My statute. I mean, eTPA. There's no allegation here that they said we need these records immediately. Right? That's not what happened here. But the statute puts no guardrails on that. It doesn't say. You're making a facial constitutional challenge. You have to show that it's unconstitutional in all its applications. And clearly we don't have any application where they're saying we want these records now. Right? Yeah. The statute allows them to demand the records on short notice or perhaps even no notice. There's nothing in the eTPA that requires them to give any particular amount of notice or time to the landlord, Your Honor. And as to physical intrusion, I mean, the Supreme Court since Katz in 1967 has held that we do not have to have a physical intrusion or a trespass to constitute a search. And I think at Battelle, at page 428, the Court's holding, it's its final expression of its holding, it wasn't saying, it wasn't objecting to the police officer's entry of the hotel. It said that the statute fails to provide any opportunity for pre-compliance review before the hotel must give its registry to the police for inspection. So it's the inspection of the documents, the registry, the effects under the lingo of the Fourth Amendment. If a police officer is trying to get hotel records under Battelle, Battelle said in fact, he walks in, asks for the records, they refuse, and then the guy, whoever's in charge there, refuses. And then the next thing he's got is handcuffs on him. And off he goes, having refused to comply with the act and facing a criminal charge. That's very different from your case. It's more drastic, but I don't, I personally don't see that as the dividing line. Actually, my time is up by 20-some-odd seconds, so. Thank you. We have two minutes for rebuttal. We'll hear from the State of New York. Mr. Woods. May it please the Court. Thank you, Your Honor. Patrick Woods on behalf of the State Defendants. As I think every member of this panel has just observed, the standard here is one for a facial constitutional challenge, which means that it has to be unconstitutional in all of its applications. Battelle did not change that. All that Battelle did was say that you can't use some independent, separate from the statutory scheme at issue basis to show that a particular administrative search scheme is facially constitutional. So if I had stood up here and argued that Article 23 subpoenas under the CPLR exist and could theoretically be used to get at the same records, that would be an argument foreclosed by Battelle. But the arguments here, that perfectly consistent with the statutory scheme, there are many ways that localities can and have been performing the survey procedure perfectly constitutionally, that is still fatal after Battelle. Battelle did not change that. There's a question. You made an argument in your briefs that was scratching my head a little bit. You argued that it was not a search because it's only a $500 civil fine. I don't really think there's a support in the case law to suggest. I don't . . . most of them are criminal, including Battelle. But the idea that if you don't comply, you're going to get hit with a fine and it's going to be deemed a zero vacancy rate, which overall could lead to rent stabilization. Why isn't that sufficient to say that that's not consensual under the Fourth Amendment? The district court didn't decide it on that ground. That's something that I think you spent a lot of time on in the brief. So first, if you don't like it, you can assume without deciding that it's coercive and reach the other two perfectly good constitutional bases to affirm. I do think for a facial constitutional challenge in this context, under the Fourth Amendment case law, where you're looking at the totality of the circumstances. And I admit this isn't a great fit, in part because it is a facial challenge and we're looking at coercion in the context of the Fourth Amendment. There's a lot of cases that say an administrative subpoena is a search. Essentially what this is is an administrative subpoena. And I couldn't find any cases that say just because it's only $500, it's still consensual. You didn't have any cases that say that, correct? I do not. And I would submit that the reason for that is in part because almost all of these cases are in the criminal context. They're not in the context of what is essentially a subpoena. You didn't even argue to the district court that it should fall under the coarsely regulated business exception, right? You didn't even make that argument, and the district court relied on that, right? We did not make an affirmative argument to Judge Kahn in that respect. The argument was raised initially by plaintiffs. And Judge Kahn, if you're going to rely on that, you're supposed to go through the Berger factors, which the district court did not do, right? Not with the degree of detail that perhaps Judge Kahn should have done. The Supreme Court has only applied that exception to firearms, liquor, and junkyard licenses, I guess. So it's a pretty narrow doctrine that we would be relying on expanding, I guess. It could include a lot of things if we went the route. You could say cars is highly regulated. Housing is highly regulated. If it's that level of generality, it certainly wouldn't be a narrow exception as envisioned by the Supreme Court, right? Well, I would say only a limited number of cases have made it to the Supreme Court on that narrow issue, but there are certainly other industries that have been recognized uniformly as closely regulated by the circuit courts. Your point is you don't need it to be closely regulated to the bank? That's correct. If there's a pre-deprivation review, then that satisfies the Fourth Amendment. And you're making a point that Article 78 takes care of that. Partially, Judge. Certainly the constructive search analysis, which is closely analogous to the vacancy procedure here, this clearly satisfies. And the Article 78 proceeding provides pre-compliance review and is, by the way, also fatal to the due process challenge that was brought. What about the argument that there is nothing in the statute that would prevent an immediate demand for the records, that there's no time frame for responding? Why isn't that problematic? Article 78 review handles that. I think if a municipality were to make a demand that had to be due in two hours, that would be arbitrary. There would certainly be grounds for state appellate court review to undo that demand. We have to have time to challenge it before any penalty is imposed. That's the key under Patel, right? Well, I think there would be a number of other problems if they were also going to enforce a $500 fine immediately, which is the only consequence. I mean, I think one of the things that's in Patel that's important is that really, although it says pre-compliance, what it really is getting at is pre-consequence review, before there's something that happens to you for not doing it. In Patel, it was immediate. You could get the handcuffs on by immediate refusal. Here, at best, we're looking at the issuance of a fine, which I don't think even could be done immediately, and adverse inference that could only be done at the end of the whole study or as part of completing the whole study. So there's ample time. And I would also say that in those scenarios, an as-applied constitutional challenge is the correct vehicle, not a facial challenge is here. Can I just ask you to spend 20 seconds on the due process argument there? I think the main point is there's no ability to undo being deemed to have 0 percent vacancy if you don't respond, that either at the hearing or even in Article 78, there would be no basis. Can you just address that? Yeah. I mean, I think that there's the recent case law itself disproves that. The Corrales-Manner decision, which was interpreting that exact provision, both interpreted it and required, I'll quote you from it. It would be inequitable and absurd to construe ETPA Section 3F to require summary substitution of actual vacancy data with non-data. And the statute requires a public hearing on 10 days' notice. The practice from the municipalities in this case was to receive written submissions challenging those determinations. So a whole bunch of landlords had been deemed 0 vacancy, but at the hearing they showed up with evidence that they had over 5 percent. That would be permissible at the hearing? Yes. I think if a court were reliable, if they showed up at the hearing with enough information and there weren't, you know, other extenuating factors involved, then it would probably be arbitrary and capricious for the municipality to proceed, because ultimately the determination of whether to proceed itself has to be rational. And if it's based on a presumption in the face of data, that's not going to survive judicial review. So I have another question, which I suppose is not really properly in this challenge because it wasn't raised by the plaintiff. But it seems to me very odd, the 0 vacancy presumption, because the way that functions is as kind of a scapegoat statute, that one landlord misbehaves and refuses to furnish the data, and that landlord is deemed to have a 0 vacancy rate. But the consequence, at least the arguable consequence, in some circumstances the consequence will be that all the other landlords then fall under regulation, even though in fact the particular locality has a better than 5% vacancy rate. The attribution of 0 to this landlord causes the assumed rate to drop below 5%, and everybody else gets punished. And that, you know, I don't know of a constitutional law precedent for this kind of thing, but it seems to me that the punishing, the arguable punishing of all the other landlords for the misbehavior of the one non-performing landlord seems to be vulnerable to an argument of arbitrary and capricious, as well as other arguments. I mean, it seems to me the statute would function better in those terms if it said something like that particular landlord shall be deemed to have a less than 5% rate, or a 0% rate, and shall be regulated accordingly. But then the calculation for the rest of the city's landlords shall be on the basis of their results resulting from the actual factual vacancy rate. But why is it, I mean, I recognize that you have a very good argument that we shouldn't consider this thing I'm talking about because it hasn't been raised by the plaintiff, and therefore is not in this challenge. But what would you say if it had been raised by the plaintiff and were challenged, just out of curiosity? I am significantly over time, may I answer? Sure. So first, you're right, it's not raised in this case. But I would disagree with sort of the lens you're viewing it with, respectfully, Judge. This is an, it's a presumption in what is ultimately a policy fact-finding. It's not fundamentally different than if a federal administrative agency put out a rule or sent out subpoenas to find out about a particular industry to do a rulemaking and had a major player or other significant players in that industry refuse to provide any information and based its rulemaking on simply, you know, the fact that there's no information provided here, we have to decide something about it, and if that information was helpful, they would have submitted it. You mean to say it's constitutional? If one entity in a world of entities does some misbehavior, if it refuses to provide information that an agency can lawfully impose sanctions on the whole world, on that whole contingent of actors because one of them did something wrong in the fact-finding process? I think that it would be certainly constitutionally sustainable for that administrative presumption to be part of their decision-making ultimately. Here it's very, very simple. One landlord who perhaps had many reasons for not wanting to give the information, you know, perhaps this landlord was doing all kinds of illegal things and for reasons that had nothing to do with vacancy rate but had to do with the landlord's unwillingness to reveal information about that landlord's business operation, he refuses to comply, and the consequence is all the other landlords get slapped with rent controls. That doesn't seem like a very rational system. It seems like a scapegoating thing. Respectfully, Judge, I will have to disagree there because I think the bodies making these decisions need to be able to make them, and they need to be able to make them based on the information that's available to them and based on reasonable presumptions. It's not fundamentally different. Supposing it said all the landlords will be subject to a fine of between $1,000 and $10,000 if one of them refuses to provide information. Would that be reasonable? No, because that's an individualized fine. It's a separate question than what is fundamentally in terms of the imposition of rent stabilization, a policy decision. I have to pick out the variable. Each one of them will have a $5,000 fine. It's just like each one of them will become regulated. Even there, I don't think that they're comparable. But the bottom line is that exact argument that Judge O'Hara raises could be raised in the Article 78 proceeding, right? Oh, yeah, no. I'm talking about a different basis for unconstitutionality, not the basis that it's not reviewable. We've talked about that. This is a completely different challenge having to do with whether it complies with due process. Yes, it could absolutely be raised in the Article 78 proceeding. It could also be raised in an as-applied challenge. What would be the answer to it is what I'm asking, and you've answered. All right. Thank you, Judge. So we'll hear from the village of Nyack. Good morning. May it please the Court. My name is Marissa Mbola. I'm with the law firm of Sokoloff Stern, LLP, on behalf of Appalese, the village of Nyack. As Mr. Woods already mentioned, the issue here is really about legislative fact-finding. When the village of Nyack conducted its vacancy survey under the ETPA, it did so for one main purpose, which was to gather information to allow it to determine whether or not it was able to declare a housing emergency under the ETPA and to adopt rent regulation. Here, the village of Nyack sent out a survey to the appellants Hudson Shore and Haven on Hudson. And no other appellants were mentioned. And in the complaint, the appellants said that they provided that information. We argued that that was consent, and before the trial court, the appellants did not respond to that argument. And we think that this Court should consider that waived. In addition, as Mr. Woods already mentioned, the 14th Amendment challenge, we argued that the presumption of a zero vacancy in the statute does not change the legislature's original, excuse me, does not change the case law that's been applied in terms of requiring courts to apply the good faith study based on a precise data standard. In addition, the statute explicitly provides for notice and public hearing, as well as Article 78 post-compliance review. Thank you. If you have any questions. Thank you. All right, we'll hear from the City of Poughkeepsie. May it please the Court, Rebecca Volk. I am Corporation Counsel for the City of Poughkeepsie. I'd just like to briefly focus on the appellant's challenge to subsection F, which is if the Court looks at the case law, of a tool that's been used previously by municipalities when doing ETPA. ETPA does not set forth any specific data standard by which municipalities are to collect and evaluate the data. When reviewing the case law in this tool, it is subject to the arbitrary and capricious standard. I think in order to find it unconstitutional, you have to look at it in a vacuum and not with the other procedural protections that are available to evaluate the finding that the legislative body made at the time of deeming the property owner non-responsive. The appellant's argument is that because the statute includes the word shall, that even the Court is unable to look behind the reason for the non-compliance, and I don't believe the case law supports that at all. In the Article 78, there's going to be a determination as to whether or not the non-complying owner raised their objections at a public hearing and had those objections heard, which actually occurred in the City of Poughkeepsie, where there was a successful challenge by similar parties that were represented here to our rent stabilization declaration. And I think you need to look at it with the entire context of the procedural protection and not just in the vacuum, which is what the appellant— Are you saying that the statute requires to be interpreted that if the landlord refuses to comply and is deemed to have a zero vacancy rate, the agency making the determination must abandon the zero and use the actual numbers if at the hearing that landlord comes up with actual numbers, actual information? I apologize, Your Honor. I think there's a couple of factors there. First is the reason for the non-compliance. If a property owner says, I was away, my mail wasn't forwarded, there's a number of factors by which a non-compliance may not be malicious, and the municipality would not have that information. It's very common for municipalities to go out to the property and attempt to verify the information in person. But I don't believe the municipality has to abandon, but I think they have to, under an arbitrary and capricious standard, take a look at that information and determine are the numbers that you're producing now true numbers as to the date that the study was done? Because once the preliminary vacancy finding is out there, there is a motivation to come forward at that point with the information once they realize what the potential vacancy study rate may be. I believe that the provision as a whole, when you look at it, is really designed to shift the burden to the landlords to produce the information, rather than the municipality having to conduct its own detailed investigation without cooperation from the landlords. Therefore, you have this provision, the vacancy provision, which can be answered quickly, it seems to me, by showing that there are no vacancies or that the vacancies are above the 5%. I think the burden only shifts once you show the non-compliance. But at that point, then, the reason for the non-compliance should be produced by that non-responding landlord. Isn't there a reason for the non-compliance? If the law is that if it goes over 5%, even if it was justified at some point, the law is if it goes over 5%, it has to stop, right? The non-stimulation has to stop if it goes over 5%, yes or no? That is correct. So if there was credible evidence, even if they had been deemed at zero, but they came forward and said, look, whatever the reason was for not complying, we can show now, today, it's over 5%. Wouldn't that have to be considered? That would have to be a new study because just because that landlord can show that they're over 5% doesn't mean somebody else has dropped during the same time period. And that's where the difficulty is, is you have to have a finite period that you're doing this study and picking a window in time. But if somebody comes in, landlord A comes in and shows that they're above 5%, then where does that stand? If they can show that the total is above 5% based upon what they have, then that ends the situation, ends the emergency, right? Well, I think there would have to be a fact-finding as to the basis for that information that's been brought forth, make sure the data is accurate that's being brought forth at that time. But, yes, the E.T.P.A. does not say how long you evaluate or what triggers the new study, and that is one of the struggles, is that you're picking a window of time to determine whether or not you are above or below 5% in that window of time. It's the same window of time. The hypothesis was that at the hearing, which is 10 days later, it is shown that the landlord who was attributed to have 0% in fact has a higher percent so that the totality is above 5%. It doesn't change the period. It doesn't change the time. If the data is reflective of the window of time in the study. It's truth, rather, for the arbitrary assumption. I would agree that that would go to the arbitrary. If they can show it's in that correct window of time and not information that's after the relevant window of time. Another question. At the hearing, do the other landlords, the complying landlords, do they have any ability to compel, do they have any subpoena power or any ability to compel the non-complying landlord who got the 0 rate attributed, which made the rate fall below 5%? Do they have any power to compel information from that landlord? No, they don't have as a private individual to compel anything from another private individual. What they would have at the public hearing is their opportunity to state that they join in that property owner's arguments that there are errors, and again, the municipality has, under the arbitrary and capricious standard, the obligation to review that. But they have no way of getting the numbers that would show that there's a better than 5% rate if the reason that fell below was the attribution of 0 to the non-complying landlord. They have no manner in which they can compel another landlord to comply. Let's assume that there's an emergency and it's properly arrived at, and then two months later it turns out that vacancies are filled and everybody's above 5%. There's a procedure then, at that point, to end the emergency, correct? The statute says the emergency comes to an end, but it doesn't say how you make that determination, and I think, again, that would have to go. It doesn't say how you make the determination. One would assume if you do a study to determine an emergency exists, you would do a study to determine an emergency no longer exists. That's up to the town. Can the landlords compel the town to make a new study? Because Judge Walker was hypothesizing that suddenly a bunch of apartments would come vacant in the emergency in truth and fact and cease to exist. I mean, the low 5% rate would cease to exist. How can the landlords get that to become a recognized reality? I am not aware of a case under Article 78 mandamus to compel that has answered the question of whether or not a new study to determine if the emergency is over would be deemed to be a mandatory act under Article 78 mandamus to compel versus a discretionary act while that remedy does not lie. There's no right to have rent stabilization if there's no emergency, right? Correct. You couldn't just refuse to do a new study and just keep going indefinitely with the rent stabilization. That could never fly, right? If the landlords are coming forward with all this evidence that the percentage has changed and the town is like, we're just not going to do a new study, that can't be. Well, I think if you – Of course, under Article 78, you would be able to challenge that under Article 78, right? I mean, we're talking in hypotheticals right now of landlords coming forth with all of this evidence at one time, whereas, again, if there was a decision to compel a new study, that to me seems like a discretionary act, whereas if you're asking for it to be reviewed, that might be reviewable under the Article 78 mandamus to review standard. But I'm not sure it can be compelled. Who would make the decision that could result in a compulsive – a new study being compelled? Article 78 – the Article 78 judge? Is a landlord going to – who thinks that now the emergency is over, that the numbers are satisfactory, go into court in an Article 78 proceeding and get the municipalities to conduct a new study? I mean, what's the procedure? As far as I know, the procedure is that the municipality conducts another study to determine if now they are above 5 percent. But what if they refuse? Can they be compelled to do it? Under the current case law of Article 78, I do not believe they could be compelled. Is that because there are not enough cases out there? Nobody's ever tried it? That's because I don't think the question's been answered whether or not. I think following the appellant's argument in this case, if you follow shall be deemed noncompliant, if you take it to the other end, the emergency shall end, then it would deem to be a mandatory duty in which mandamus to compel would lie. And the judge could order it to come to an end. Okay. Well, that judge would order it. That would – that appears to me on the statutory face to be the only remedy available. All right. Thank you. Thank you. We only have two minutes in rebuttal. Thank you, Your Honors. Quickly, first, I want to be clear. Our due process argument, Your Honor, is the so-called scapegoat theory that you referred to. I think I heard some reference to that not being asserted in this case. That is the essence of our due process claim, is that we're essentially being held in default for our co-defendant's failure to answer the complaint, by analogy. Well, we looked very carefully at your brief to see whether that argument was being made. And while, you know, one could kind of sense it a little bit in the background, that's not making an argument. And none of your three adversaries saw it there and answered it. They couldn't – they didn't see it there. And I looked to see, is that argument being made? And I'm not surprised that you now contend it's being made. But it ain't being made. I think it's the entirety of point two of my brief, respectfully, Your Honor. No, your point was that you can't change the zero percent, that it's deemed a zero percent, and it can't be undone, that it's an irrebuttable presumption. That was your due process argument. That's the way I read it. It prohibits landlords who did respond from challenging – from bringing in evidence that, wait a minute, these other guys who didn't respond actually do have vacancies. That's our argument. It denies us an opportunity to be heard on that. Before this statute was enacted, there was a Second Department case called Spring Valley that said in this type of case, in an Article 78, the responding landlords could issue subpoenas in that litigation to try to bring in proof that non-responding landlords actually had vacancies. We argue that we think Subdivision F was adopted to eliminate that, okay, to prevent that opportunity. That is exactly our argument. And in the Corley's Manor case that the Attorney General referred to a moment ago, that doesn't hold to the contrary. Corley's Manor did not hold – that was the recent case that struck down the Poughkeepsie Declaration of Emergency. I handled that case. Corley's Manor did not hold that, oh, shall be deemed – that doesn't apply to courts. Courts can bring in – that's not what happened. In Corley's Manor, our argument was there were a number of responding landlords who reported something like 20 vacancies that the city didn't count. These are responding landlords, not non-responding landlords. It was arbitrary and capricious for the city in that case to simply not count something like 20 reported vacancies. I'm over time again, but I do implore the Court to take a look at point two of my brief because that is our claim in our argument.  Thank you. Thank you to everybody. We'll reserve the decision. Have a good day.